# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| DUNCAN ERIC SMITH, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:18-cv-1530 |
| OFFICER KEVIN VASQUEZ, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on the Plaintiff's Motion for Summary Judgment and Motion in Limine, and Defendant's Motion for Summary Judgment and Motion in Limine.

At approximately 10:00 p.m. on November 12, 2017, Prince William County Police Officer Kevin Vasquez ("Defendant") made a traffic stop of Mr. Duncan Smith ("Plaintiff") for speeding. Defendant was hired by the Prince William County Police Department in July 2016 and wrote his first citation on December 22, 2016 – approximately 11 months before the incident. Defendant was wearing a body-worn camera during the entirety of the traffic stop, which he turned on after Plaintiff pulled off the roadway and stopped in a parking lot. Plaintiff's brother Joshua Smith and friend Robert Pulley were passengers in the car when Defendant pulled Plaintiff over.

Defendant approached Plaintiff's car and informed him that he was speeding and requested to see Plaintiff's driver's license and registration. As Plaintiff and Defendant engaged in some conversation, Plaintiff provided his registration and Maryland issued driver's license to Defendant. Defendant then returned to his patrol car where he prepared one summons for speeding in violation of Virginia Code § 46.2-870 and a second summons for expired registration in violation of Virginia Code § 46.2-613. Defendant was in his patrol car preparing the summonses for approximately 14 minutes, during which time he recorded some of the information from Plaintiff's driver's license to both summonses.

When Defendant returned to Plaintiff's car, he requested that Plaintiff sign each summons. Defendant handed Plaintiff the summons for speeding, and Plaintiff immediately signed and handed it back to Defendant. Defendant then removed the carbon copy of the first summons and returned it to Plaintiff, who put the carbon copy of the first summons in the car's windshield visor. Defendant then handed Plaintiff the summons for expired registration and instructed Plaintiff to do "the same thing." When Plaintiff returned the second summons, Defendant stated that the mark Plaintiff made on the second summons' signature line "did not look like [Plaintiff's] signature." Defendant then requested that Plaintiff sign his "actual name" on the second summons, but

2

Plaintiff refused, stating that he had already provided his signature.

Defendant instructed Plaintiff that he needed a signature to let him leave because it would serve as his "promise to come to court." Defendant then requested to see Plaintiff's driver's license so that he could compare the signature on the second summons to the signature on his license. Reviewing Plaintiff's driver's license and the summons, Defendant believed that Plaintiff's signature did not match.

Defendant continued to request Plaintiff's "actual signature" on the summons as Officer Kelly arrived on the scene and approached the passenger side of Plaintiff's car. Ofc. Kelly was also wearing a body-worn camera, which he activated upon arriving at the scene. Shortly after Ofc. Kelly arrived, Defendant asked Plaintiff to step out of the vehicle. Plaintiff complied, and Defendant handcuffed Plaintiff and escorted him to the rear of Plaintiff's vehicle, where Defendant searched Plaintiff. While Defendant was searching Plaintiff, Sergeant Benjamin Grantham also arrived at the scene. Sgt. Grantham was not Defendant's supervisor, but like Ofc. Kelly, stopped to assist Defendant. As Sgt. Grantham and Ofc. Kelly arrived, Defendant escorted Plaintiff to the rear of his patrol car, placing him in the back seat.

Ofc. Kelly reviewed both summonses and Plaintiff's driver's license and concluded that the signature on the documents matched

3

the signature on Plaintiff's license. Having concluded that the signatures matched, Ofc. Kelly advised Defendant to release Plaintiff. Sgt. Grantham also advised Defendant to let Plaintiff go because in his experience, marking a summons "with a line or an x" was sufficient. Having received both Ofc. Kelly and Sgt. Grantham's recommendations, Defendant released Plaintiff on his own recognizance. The duration of the traffic stop was approximately 37 minutes.

On January 13, 2018, Plaintiff appeared in the General District Court for Prince William county and pled not guilty to the speeding charge. Plaintiff was tried and ultimately found guilty of going 50 mph in a 35-mph zone.

Count I of Plaintiff's complaint alleges that Defendant unreasonably searched and seized Plaintiff in violation of the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Counts II, III, and IV allege state law claims for False Arrest, Assault, and Battery. Plaintiff's principal argument is that Defendant unlawfully searched and seized Plaintiff after he had signed the second summons because Defendant "exceed[ed] the time needed to handle the matter for which the stop was made[.]" Rodriguez v. United States, 135 S. Ct. 1609, 1612 (2015).

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is

no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). This Court finds this case is ripe for summary judgment.

As to Count I, Defendant argues that he is entitled to qualified immunity for two reasons. First, Defendant argues that he did not violate any clearly establish law because he was entitled to arrest Plaintiff for speeding. Second, Defendant argues that even if he was mistaken when he refused to accept Plaintiff's signature on the second summons, his mistake was reasonable. Plaintiff argues that Defendant violated the "principle requirement of reasonableness underpinning the rights afforded [by] the Fourth Amendment" because Defendant did not have any reasonable suspicion of additional criminal activity to justify the subsequent search and brief detention of Plaintiff after receiving Defendant's mark on the second summons.

5

Police officers sued for constitutional violations under 42 U.S.C. § 1983 may be protected by the doctrine of qualified immunity if the police officer did not violate clearly established statutory or constitutional rights of which a reasonable officer would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine whether the defense is available, a court must determine: (1) whether the officer's conduct violated a clear constitutional right; and (2) it would be clear to an objectively reasonable officer that his conduct violated that right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001). The doctrine of qualified immunity extends protection to a "margin of error" where officers "navigate uncharted areas at the margins of constitutional criminal law." Tarantino v. Baker, 825 F.2d 772, 774 (4th Cir. 1987); see also Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992) ("officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.").

The Court agrees with Defendant that he was entitled to arrest Plaintiff for speeding, and thus, did not violate any "clearly established" law. Virginia Code § 46.2-936 provides that "[w]henever any person is detained by or in the custody of an arresting officer . . . for a violation of any provision of this title punishable as a misdemeanor, the arresting officer shall . . . issue a summons [and] [u]pon the giving by such person of his written promise to appear . . . the officer shall forthwith release

6

him from custody." Speeding and expired registration violations are misdemeanors under Virginia law. Va. Code. § 46.2-937. But while Virginia law dictates that an officer "shall" issue summonses for speeding and expired registration, Virginia Code § 46.2-936 also provides that "[a]ny person refusing to give such written promise to appear . . . shall be taken immediately by the arresting officer before a magistrate[.]"; see also Virginia Code § 46.2-940 ("If any person . . . refuses to give a written promise to appear under § 46.20-936 or § 46.2-945, the arresting officer shall promptly take him before a magistrate").

In addition to Virginia state law, the Supreme Court has repeatedly recognized that police officers do not violate the Fourth Amendment by arresting drivers for minor traffic infractions. Virginia v. Moore, 553 U.S. 164, 171 (2008) ("In a long line of cases, we have said that when an officer has probable cause to believe a person committed even a minor crime in his presence . . . [t]he arrest is constitutionally reasonable."); see also Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) (arrest for seatbelt violation in presence of officer did not violate Fourth Amendment). And because Defendant's arrest of Plaintiff was lawful, so was the subsequent search. Moore, 553 U.S. at 177 (search incident to a lawful arrest requires no additional justification).

Assuming, for the sake of argument, that Defendant violated the Virginia Code's requirement to only issue Plaintiff summonses for speeding and expired registration, a state requirement to issue a ticket cannot, by itself, serve as the basis of a Fourth Amendment violation. Any "additional protections" the state provides are exclusively a matter of state law. Moore, 553 U.S. at 171; Whren v. United States, 517 U.S. 806, 815 (1996) (department regulation of plainclothes police officers did not change the meaning of the Fourth Amendment because "[w]e cannot accept that search and seizure protections of the [4th] Amendment are so variable."); California v. Greenwood, 486 U.S. 35, 43 (1988) (whether a search is "reasonable" within the meaning of the Fourth Amendment does not "depend on the law of the particular state where the search occurs."); Cooper v. California, 386 U.S. 58, 62 (1967) (holding that there was no constitutional violation but recognizing that states may "impose higher standards on searches and seizures than required by the Fourth Amendment"); see also Pegg v. Herrnberger, 845 F.3d 112, 118 (4th Cir. 2017) (concluding that even if police officer's arrest was not permitted under state law, that was "of no consequence" for Fourth Amendment and qualified immunity purposes).

Plaintiff concedes that while police officers are entitled to arrest individuals when they observe even minor traffic stops, Defendants reliance on that principle "ignores the superstructure

the Supreme Court has imposed over traffic stops." In particular, Plaintiff argues that under Rodriguez v. United States, 135 S. Ct. 1609 (2015) and Illinois v. Caballes, 543 U.S. 405 (2005), a traffic stop becomes unlawful if "it is prolonged beyond the time reasonably required to complete the mission of issuing a warning ticket." Plaintiff further argues that, because Defendant prolonged the traffic stop beyond its original "mission," that Defendant needed some additional "reasonable suspicion" or the driver's consent to detain and search Plaintiff.

But as Defendant correctly argues, the issuance of a summons under § 46.2-936 is the equivalent of issuing a post-arrest document that releases the arrestee. Young v. Commonwealth, 706 S.E.2d 53, 57 (Va. Ct. App. 2011). Here, Defendant was designated as the "arresting officer" under Va. Code. § 46.2-936 and was correct that he must have obtained Plaintiff's "written promise to appear" before releasing Plaintiff from "arrest." Va. Code § 46.2-936. Believing that he had not obtained a written promise from Plaintiff, Defendant continued to request Plaintiff's signature so that he could be released from "arrest." While Sgt. Grantham and Ofc. Kelly ultimately advised Defendant to release Plaintiff, those officers did not make that recommendation based on the existence of any clearly defined statutory or constitutional right requiring that result. Nor could they. Plaintiff's arrest was

9

clearly authorized by Virginia law and well-settled Fourth Amendment precedent.

Even if Defendant had violated clearly established law in arresting Plaintiff, any mistake of fact or law that Defendant may have made was reasonable. Defendant was a relatively inexperienced police officer, and when presented with Plaintiff's Maryland driver's license, Defendant claimed he had difficultly locating Plaintiff's signature. Plaintiff argues that any mistake that Defendant made was not reasonable because both Sgt. Grantham and Ofc. Kelly concluded that Defendant should release Plaintiff after examining both summonses and Plaintiff's driver's license. Plaintiff also argues that Defendant had already recorded much of the information on Plaintiff's driver's license when he drafted both summonses in his patrol car, before asking Plaintiff to provide his "actual signature."

The Court finds that any mistake of fact or law was reasonable. While it is true that Defendant had transcribed much of the information contained on Plaintiff's license when he prepared the summonses, Defendant cannot be expected to have memorized the layout of Plaintiff's license or the appearance of his signature during that short, 14-minute period. The traffic stop took place at night in a dimly lit area, and Plaintiff's signature is indisputably small and barely legible. That Defendant could not locate or otherwise match that signature with what

Plaintiff provided on the summonses was a reasonable, if not understandable, mistake. See Messerschmidt v. Millender, 565 U.S. 535, 546 (2012) (qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments"). The Court concludes that Defendant is entitled to qualified immunity as to Count I.

Defendant next argues that because he had lawful authority to arrest Plaintiff, the state law claims for False Arrest (Count II), Assault (Count III), and Battery (Count IV) also fail. The Court agrees. Plaintiff cannot prevail on these claims if the arrest was lawful. Lewis v. Kei, 708 S.E.2d 884, 890 (Va. 2011) (citing DeChene v. Smallwood, 311 S.E.2d 749, 752 (Va. 1984)); see also Ware v. James City County, 652 F. Supp. 2d 693, 712 (E.D. Va. 2009) ("Virginia law recognizes that police officers are legally justified in using reasonable force to execute their lawful duties.")(citing Pike v. Eubank, 90 S.E.2d 821 (Va. 1956)). For the reasons already stated, Defendant was entitled to arrest Plaintiff.

For the forgoing reasons, this Court finds that Defendant is entitled to summary judgment. An appropriate order shall issue.

*Claude M. Hilton*
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
~~October ___, 2019~~
Nov. 8, 2019

11